

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Bert Ford, Administrator
Texas Liquor Control Board
Austin, Texas

Dear Sir:            Opinion No. O-2803
                     Re: Discretionary Authority of
                         County Judge, Appeals to
                         District Judge, Renewal of
                         Licenses, Supplementary
                         Licenses, Injunction Proceed-
                         ings and Related Questions
                         under Article II of Texas
                         Liquor Control Act, Vernon's
                         Penal Code, Article 667

        We have your letter of October 2, 1940, re-
lating to procedural matters pertaining to the is-
suance and refusal of beer licenses and wine and beer
permits, supplementary licenses and related matters.
For convenience, we shall state the questions as you
have grouped them and then in each instance give our
answers to the questions in each group.

### Issuance of Licenses

#### A. Discretionary Authority Vested in County Judge

        Under the foregoing heading, the following
statement and questions are set forth in your letter:

        "The Texas Liquor Control Act, Sec-
tion 6, Article II thereof, provides in
part as follows:

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

> "'If upon hearing upon the petition of
> any applicant for a license, the County
> Judge finds the facts stated therein to be
> true and has no other <u>lawful reason</u> for de-
> nying the application, he shall enter an or-
> der so certifying, and a copy of said order
> shall be delivered to the applicant;' (Under-
> scoring ours)

> "1.  Upon what ground may a County
> Judge refuse a license under the meaning
> of the term 'lawful reason', as that term
> is used in the above-quoted statute?

> "2.  May a license be denied for any of
> the reasons for which a license may be can-
> celled?"

1.  Our opinion is that in saying that the
County Judge shall issue a license "if upon hearing
upon the petition of any applicant for a license, the
County Judge finds the facts stated therein to be true,
and has no other lawful reason for denying the applica-
tion," the Legislature intended by the underscored
words to refer to the following provisions of the same
section: (Article 667-6, Vernon's Penal Code; Acts, 1937,
45th Legislature, Ch. 448, section 49)

> "If upon hearing upon the petition of
> any applicant for a license the County Judge
> finds any facts stated therein to be untrue,
> the application shall be denied; and it
> shall be sufficient cause for the County
> Judge to refuse to grant any license
> when he has reason to believe that the ap-
> plicant will conduct his business of sell-
> ing beer at retail in a manner contrary to
> law or in any place or manner conducive
> to violation of the law, or likely to re-
> sult in any jeopardy to the peace, morals,
> health, or safety of the general public. . ."

In our opinion, a "lawful reason" for denying the application for a license, under the terms of the foregoing statute, would be any fact or facts heard in evidence by the County Judge which would give reasonable basis for a conclusion that the applicant will conduct his business of selling beer at retail in a manner contrary to law or in any place or manner conducive to violation of the law, or likely to result in any jeopardy to the peace, morals, health, or safety of the general public. The authority to deny the license on such ground is of course in addition to the authority to deny the license where the County Judge finds any facts stated in the application to be untrue.

2. Our opinion is that a license may be denied only on the grounds set forth in Article 667-6, Vernon's Penal Code, as grounds for refusing a license. However, we call your attention to the fact that in some instances, what is a ground for denying a license is also a ground for canceling a license. Article 667-6 provides that a license may be denied if the facts stated in the application are found not to be true. False statements in the application are also a ground for canceling the license under subdivision (g) of Article 667-19. The statements required to be in the application are set out in Article 667-5. The requirements of a retailer's application under subdivisions (4), (5), (6) and (7) of Article 667-5, correspond to the grounds for canceling a license set out in subdivisions (m) and (n) of Article 667-19. The remaining grounds for cancellation set out in Article 667-19 relate generally to the operation of his business by a licensee, and would have no application to a person who has not previously had a license. If a person has previously obtained a license and has violated any of the provisions of Article 667-19, in our opinion such violations could be considered by the County Judge in determining whether the requisite statement in his application that he is a "law abiding" citizen is true, and in determining whether the applicant "will conduct his business of selling beer at retail in a manner contrary to law or in any place or manner conducive to a violation of the law, or likely to result in any jeopardy to the peace, morals, health, or safety of the general public" under

Honorable Bert Ford, page 4

the provisions of Article 667-6. To this extent, we believe that the reasons for which a license may be canceled may also be grounds for which a license may be denied.

You make the further statement and ask questions thereon as follows:

"The Texas Liquor Control Act, Section 6, Article II thereof, provides in part as follows:

"'If upon hearing upon the petition of any applicant for a license the County Judge finds any facts stated therein to be untrue, the application shall be denied; and it shall be sufficient cause for the County Judge to refuse to grant any license when he has reason to believe that the applicant will conduct his business of selling beer at retail in a manner contrary to law or in any place or manner conducive to violation of the law, or likely to result in any jeopardy to the peace, morals, health, or safety of the general public.' (Underscoring ours)

"1. Under the term 'reason to believe,' would the County Judge be permitted to refuse a license upon matters within his personal knowledge, or does he have to base his reasons for such refusal upon evidence introduced before him upon the hearing held to determine whether or not the license should be granted?

"2. Is the County Judge within his rights in refusing a license for a particular location where there is evidence that the particular place for which the license is sought is one of ill repute as to drunkenness, previous conduct of patrons, the practice of immoral acts; that it has constituted a highway traffic hazard; or that it is otherwise a place, by reason of its past records, conducive to violations of the law and re-

sulting in jeopardy to the morals, peace and health
of the community?

"3.  Is the County Judge warranted in refus-
ing a person a license where it is shown that
that particular person has in the past been a
violator of the liquor laws and that his past
actions and past conduct are such that show he
has not been a person who respects or obeys the
laws in general?

"4.  Would the County Judge be warranted in
refusing a person a license where it is shown that
that particular person has committed acts contrary
to public decency and acts which resulted in jeopardy
to the morals, health, peace or safety of the general
public?

"5.  In granting such license, does the
County Judge act in an administrative capacity
or in a judicial capacity?

"6.  Could the County Judge consider, upon
a hearing to determine whether or not a license
should be granted, affidavits of pertinent facts
and circumstances, as is the case in administrative
hearings; or is the County Judge only allowed to con-
sider upon such hearing matters and things introduced
in accordance with the rules of evidence recognized
in the courts of law?

"7.  What legal weight is to be given by the
County Judge to the recommendations made by the
District or County Attorney or the Sheriff of the
county, and the Mayor and Chief of Police of any
incorporated city or town wherein the applicant
for license proposes to conduct his business, or
by a representative of the Board, and would it
be material whether such recommendations were made
in writing or by oral testimony; would such recommen-
dations be sufficient to warrant the County Judge
in refusing such license?

"8.  If such recommendations are not sufficient
to warrant a refusal based upon recommendations of

Honorable Bert Ford, page 6

law, then what is it necessary to add to
such recommendations in order to give them
sufficient weight to justify a refusal?"

Our answer to the questions stated above
are as follows:

1. The County Judge would not be permitted
to refuse a license upon matters within his personal
knowledge, not disclosed by evidence produced at a
hearing, but would have to base his reasons for such
refusal upon evidence introduced at the hearing held
to determine whether or not the license should be
granted. Article 667-6, Vernon's Penal Code, specifical-
ly provides that notice of a hearing shall be given and
that a hearing shall be held by the County Judge. One
of the purposes of the hearing evidently is to afford
the applicant an opportunity to know what evidence is
offered against him and to explain or to rebut such
evidence by evidence of his own. This purpose will be
defeated if the County Judge is permitted to deny
the application upon matters not disclosed at the hear-
ing.

In the case of Gulf Oil Corporation v. York,
134 S. W. (2d) 502, 505, Chief Justice McClendon of
the Austin Court of Civil Appeals said:

"It is now a well settled rule, es-
tablished by numerous decisions in this and
other jurisdictions, that orders of an
administrative board, to be valid, must be
supported by substantial evidence introduced
at a hearing before the board. Absent such
substantial supporting evidence, such orders
are arbitrary, unreasonable, and baseless."

A comparable case in the United States Supreme
Court is Interstate Commerce Commission v. Louisville
and Nashville Railroad Co., 227 U. S. 88, 91, 93, in
which the court says:

Honorable Bert Ford, page 7

(at page 91)

"But the statutes gave the right to
a full hearing, and that conferred the
privilege of introducing testimony, and
at the same time imposed the duty of de-
ciding in accordance with the facts proved.
A finding without evidence is arbitrary
and baseless. And if the Government's
contention is correct, it would mean that
the Commission had a power possessed by
no other officer, administrative body, or
tribunal under our Government. It would
mean that where rights depended upon facts,
the Commission could disregard all rules
of evidence, and capriciously make find-
ings by administrative fiat. Such auth-
ority, however beneficently exercised in
one case, could be injuriously exerted
in another; is inconsistent with rational
justice, and comes under the Constitution's
condemnation of all arbitrary exercise of
power."

(at pages 93-94)

"The Government further insists that
the Commerce Act (36 Stat. 743) requires
the Commission to obtain information nedes-
sary to enable it to perform the duties and
carry out the objects for which it was created,
and having been given legislative power to
make rates it can act, as could Congress, on
such information, and therefore its finding
must be presumed to have been supported by such
information, even though not formally proved at
the hearing,- for manifestly there is no hear-
ing when the party does not know what evidence
is offered or considered and is not given an
opportunity to test, explain, or refute. The
information gathered under the provisions of

Honorable Bert Ford, page 8

§12 may be used as basis for instituting prosecutions for violations of the law, and for many other purposes, but is not available, as such, in cases where the party is entitled to a hearing. The Commission is an administrative body and, even where it acts in a quasi-judicial capacity, is not limited by the strict rules, as to the admissibility of evidence, which prevail in suits between private parties. Int. Com. Comm. v. Baird, 194 U. S. 25. But the more liberal the practice in admitting testimony, the more imperative the obligation to preserve the essential rules of evidence by which rights are asserted or defended. In such cases the Commissioners cannot act upon their own information as could jurors in primitive days. All parties must be fully apprised of the evidence submitted or to be considered, and must be given opportunity to cross examine witnesses, to inspect documents and to offer evidence in explanation or rebuttal. In no other way can a party maintain its rights or make its defense. In no other way can it test the sufficiency of the facts to support the finding; for otherwise, even though it appeared that the order was without evidence, the manifest deficiency could always be explained on the theory that the Commission had before it extraneous, unknown but presumptively sufficient information to support the finding. United States v. Baltimore & Ohio S. W. R. R., 226 U. S. 14." (Our emphasis)

See also Brown v. Humble Oil & Refining Co., 126 Tex. 296, 83 S. W. (2d) 935; Rabbit Creek Oil Co. v. Shell Petroleum Co., 66 S. W. (2d) 737; Humble Oil & Refining Co. v. Railroad Commission, 83 S. W. (2d) 695.

While the above cases express what we believe to be the correct view, we call your attention to certain decisions which would indicate that an administrative official might consider some matters proved at other hearings and not introduced at the hearing on the particular application involved. In Railroad Commission v. McDonald, 90 S. W. (2d) 851, Judge Baugh of the Austin Court of Civil Appeals said:

Honorable Bert Ford, page 9

(at page 584)

"We do not understand, nor do we think
the Legislature ever contemplated, that the
Railroad Commission should be required,
each time an applicant sought a permit to
use a state highway for commercial pur-
poses, to conduct extensive hearings over
and over again, as to the condition of such
highway, the traffic thereon, and the public
convenience in the use of such highway. When
these facts are ascertained by the commission,
as related to cardinal public highways of the
state, in the absence of a showing that con-
ditions have changed thereon since the ascer-
tainment of such facts, the Railroad Commis-
sion may properly act upon applications for
permits to operate upon such highways, based
upon the facts and conditions relative to such
highways theretofore properly and adequately
obtained, without the necessity of detailed
proof thereof on each and every application
presented to it."

In Railroad Commission v. Southwestern Grey-
hound Lines, Inc., 92 S. W. (2d) 296 (reversed on
other grounds, 99 S. W. (2d) 263) Judge Baugh said:

(92 S. W. (2d) at page 304)

"While the statute contemplates and re-
quires the commission to ascertain facts
as to the burdens the highways involved will
bear, both as to physical condition and traf-
fic congestion, we do not understand the law
to require that every time such application is
made to use a state highway as a carrier the
commission must conduct extensive hearings,
and require detailed proof as to such condi-
tions. If, in hearings upon other applications
to operate over the same highways, it has as-
certained these facts in hearings before it,
it is entitled to take into consideration such
facts and conditions so officially ascertained

Honorable Bert Ford, page 10

by it, without the needless expense and effort
of reascertaining the same facts over and over
again before it can pass upon such application.
A cardinal highway being here involved, and
one over which appellee, and doubtless many
other carriers had been granted permits to
operate, we think it may be assumed that the
commission had, as the law required it to do,
sufficiently ascertained, and was in possession
of, these facts and circumstances at the time
it passed upon Jackson's application. See
Railroad Commission v. McDonald (Tex. Civ.
App.) 90 S. W. (2d) 581. The burden was there-
fore upon appellee to show that no additional
burdens could safely be placed upon such high-
way, or that the commission was not in possession
of these facts, before it was entitled to set
such order aside."

See also State v. Public Service Commission,
95 Wash. 376, 163 Pac. 1143, 166 Pac. 793, in which
the court said:

(163 Pac. at page 1146)

"We have given the foregoing quotation
from the decision of the commission in this
case for the reason that, besides stating
some of its arguments, the quotation also
contains some findings of fact which we
think the commission as an administrative
and regulative body has peculiar powers to
determine. It is not bound, as is a court,
to acquire its information concerning all
matters involved in the proceeding before
it wholly and entirely from the evidence
of witnesses or other evidence produced
before it, but may take into consideration
the results of its general investigations,
general information upon a given subject
within its powers, and all matters which
affect the matter and concerning which it
must determine the facts."

Honorable Bert Ford, page 11

Although broad language is used in the opinions from which we have just quoted, as to the power of administrative officers, where a hearing is required, to consider facts not proved at the hearing, we believe that if the question is squarely presented, the authority to consider facts not proved at the hearing will be confined to facts which are so generally well known and accepted that they would come within the same class as matters of which courts could take judicial notice. Compare Wigmore on Evidence (3rd Edition), Section 2580. With this exception, in our opinion the County Judge's action should be based only upon evidence produced at the hearing upon the application for the license.

2. Article 667-6, Vernon's Penal Code, authorizes the County Judge to deny the application for a license if he finds that the applicant will conduct his business of selling beer "in any place or manner conducive to violation of the law, or likely to result in any jeopardy to the peace, morals, health or safety of the general public." This statute expressly authorizes the County Judge to consider any relevant facts in determining whether the particular location is one which is conducive to violation of the law or likely to result in danger to the peace, morals, health or safety of the general public. In making such determination he may consider, among other things, evidence that the place is one of ill repute as to drunkenness, previous conduct of patrons at such place, the practice of immoral acts at such place, or that it has constituted a highway traffic hazard. Of course, the weight to be given such considerations, in determining whether the application should be granted or denied, is a matter within the proper discretion of the County Judge.

The place at which a licensee plans to conduct his business is a proper and often an important consideration for the public officials charged with determining whether the license should be granted. In the case of Goytino v. McAleer, et al., 103 Pac. 174, where an application for a license for a pool hall had been denied on the ground "that the place named therein was located

Honorable Bert Ford, page 12

in a part of the city inhabited by a class of people
which would render a poolroom, if established therein,
a place of resort for disorderly and objectionable
persons, and that a poolroom in said locality, being
populated by cholos and other people of like or similar
character, would, in the judgment of the board, tend
to the disturbance of the public peace, and to render
the preservation of order in said locality difficult,"
the California Court of Appeal said:

> ". . . Conceding that no arbitrary
> discretion can be exercised by the board
> of police commissioners in applying the
> ordinance in question, the reasons assigned
> by the answer for denying the application
> for a license were exactly such as should
> actuate a police department in denying a
> permit or license to keep a place of amuse-
> ment which is liable to become the scene
> of disorderly conduct and disturbances of
> the peace. . ."

Speaking of a statute conferring on a county
court the authority to grant or deny licenses for pool
halls, the Missouri Court of Appeals said in State ex
rel. McClanahan v. DeWitt, 142 S. W. 366:

(at page 368)

> ". . . We believe the law lodges in
> the county court the discretionary power
> to refuse such licenses when in their
> opinion there are reasonable grounds to
> apprehend that the person applying is not
> a suitable person or the place is not suit-
> able for the carrying on of business. For
> instance, the applicant may be an habitual
> law breaker or grossly immoral, or the
> place may be near to a church or school
> building, or private dwelling, which would
> constitute it a nuisance."

Honorable Bert Ford, page 13

See also State ex rel. Oetker v. Johnson, 211 S. W. 682 (Missouri Court of Appeals).

3. As we have stated in our answer to your second question under this subdivision, the County Judge may exercise a reasonable discretion in determining whether or not the applicant will probably conduct the business of selling beer in an illegal manner, and it is our opinion that he may properly consider as relevant evidence in such determination whether the particular applicant has in the past been a violator of the liquor laws and whether or not he is a law-abiding citizen. As we shall hereinafter point out, the proceedings are administrative rather than judicial, and the strict rules of evidence applicable to judicial trials would not be applicable. The County Judge may hear and consider evidence of specific acts of misconduct as well as evidence of general reputation.

4. Likewise, we believe that in determining whether or not the application for a license should be granted, under the rules hereinbefore stated, the County Judge may properly consider evidence to the effect that the applicant has committed acts contrary to public decency and acts which resulted in jeopardy to the morals, health, peace or safety of the general public.

5. In granting a license under Article 667-6, Vernon's Penal Code, the County Judge is acting in an administrative capacity as distinguished from a judicial capacity. The Supreme Court of Texas, in the case of State v. DeSilva, 105 Tex. 95, 145 S. W. 330, said, with reference to the revocation of a liquor license:

(105 Tex. at page 100)

"The answer to the second question depends upon the character of the act of removal. Was it judicial? The fact that the person who performed the act of removal was a county judge does not make the act judicial in character. That depends upon

Honorable Bart Ford, page 14

the matter in controversy, and the remedy
applied. It would be a useless consump-
tion of time to adduce authorities or argu-
ments to the effect that a license to sell
intoxicants is not a property right, but
is a privilege granted by the State, which
may be revoked.

"The State had the power to prescribe
the manner of enforcing the law by revoking
a license granted, which action was not
judicial, but administrative or ministerial.
In the matter of Saline County, etc., 45
Mo., 52." (Our emphasis)

The same reasoning, which led the Supreme Court
to hold that the revocation of a license is an administra-
tive act, applies to the granting or refusal of a license.

Compare Jones v. Kellogg, 140 S. W. (2d) 592,
in which the San Antonio Court of Civil Appeals held
that there is no right of appeal to the district court
from the refusal of the County Judge to grant a licensee
leave to change his place of business.

6. The proceeding before the County Judge
being administrative rather than judicial, the formal
rules of evidence applicable to judicial proceedings
do not here apply, and the County Judge may consider
affidavits of pertinent facts and circumstances. In
this respect, we believe that the proceedings before
the County Judge are in the same category as the pro-
ceedings before the Board or the Administrator, with
reference to which it has been expressly held by the
courts that affidavits are admissible. Bradley v. Texas
Liquor Control Board, 108 S. W. (2d) 300; Texas Liquor
Control Board v. Floyd, 117 S. W. (2d) 530; Texas
Liquor Control Board v. Lanza, 129 S. W. (2d) 1153;
McCormick v. Texas Liquor Control Board, 141 S. W. (2d)
1004.

7. Article 667-6, Vernon's Penal Code, provides that "in the granting or withholding of any license to sell beer at retail, the County Judge in forming his conclusions shall give due and proper consideration to any recommendations made by the District or County Attorney or the Sheriff of the County, and the Mayor and Chief of Police of any incorporated city or town wherein the applicant proposes to conduct his business and to any recommendations made by representatives of the Board."

The statute gives no further statement clarifying what sort of recommendations are referred to or what weight shall be given them. We believe that it was the intention of the Legislature that the recommendations of the officers named be considered together with the other evidence in the hearing and that they should be given such weight as is due to the knowledge of the facts which these officers possess. These recommendations may be either in the form of written affidavits or oral testimony. Whether or not they are in themselves sufficient to justify a refusal will depend upon whether they state facts which are sufficient to form a reasonable basis for the refusal. Bare recommendations, which state no facts supporting them, would not be sufficient grounds for refusal.

8. This question has been covered in part by our preceding answer. If the recommendations of the officers state no facts supporting them, we think that the recommendations would not in themselves be sufficient ground for refusing the license, and that a refusal of the license would be justified only if there were additional evidence offered showing facts which would form a rational basis for the refusal.

B. **Appeals to the District Court from a Refusal of a License by a County Judge**

Under the foregoing heading you make the following statement and ask the following questions:

Honorable Bert Ford, page 16

"The Texas Liquor Control Act, Section 6, Article II thereof, provides in part as follows:

"'In the event the County Judge, Texas Liquor Control Board or Administrator denies the application for a license, he shall enter his judgment accordingly, and the applicant may within thirty (30) days thereafter appeal to the District Court of the county where such application is made, and such District Court may hear and determine such appeal in term time or vacation in a trial de novo. It shall be incumbent upon the applicant to make the same showing in all matters to the District Judge that he is required by this Article to make to the County Judge, and the District Judge in hearing upon the appeal shall hear the cause and render judgment in like manner as required of the County Judge. Judgment of the District Court shall be final and if the application shall be granted by final judgment, a certified copy of the judgment shall be presented to the Assessor and Collector of Taxes who shall thereupon accept the fees required and make report to the Board in the manner required upon like orders issued by the County Judge. Any person appealing from the judgment of the County Judge shall give bond for all costs incident to such appeal and shall be required to pay such costs if the judgment on appeal is unfavorable to the applicant but not otherwise.'

"1. Upon an appeal to the District Court from refusal of a license, does the District Judge sit as an administrative agency; or does he sit as a court?

"2. Upon such an appeal, is it the province of the District Judge to determine whether or not the license should or should not be refused; or is it his province to determine only the issue of whether or not the County Judge acted arbitrarily and capriciously, based his reasons for refusal upon sufficient evidence, and whether or not his reasons for such refusal were good in law?"

In reviewing the action of the County Judge in granting or refusing a license, the district court acts in a judicial capacity and not in an administrative capacity. While the action of the County Judge, the Board, or Administrator in granting, refusing or canceling a permit is administrative, the review by the district court is of necessity judicial. A careful analysis of the situation is given by Judge Blair of the Austin Court of Civil Appeals in the case of Bradley v. Texas Liquor Control Board, 108 S. W. (2d) 300, 302, 304:

(at page 302)

". . . The cancellation of a permit to sell liquor under the Liquor Control Act and the principle of law governing such matters is not a civil suit or cause of action; but the power and authority to cancel such a permit is merely the exercise of an administrative function and duty imposed by the act upon the board or its administrator. A permittee or licensee under the act has no vested right to sell liquor, but is a mere permittee or licensee with the privilege of selling liquor in accordance with the terms of the act, and accepts his permit or license subject to the authority of the board to cancel it for any violation of the statutes or any rule or regulation promulgated by the board under authority of the act. And if the statute were given the construction contended for by appellant, it would be unconstitutional as an attempt on the part of the Legislature to confer administrative power and duties upon the judicial department of the government."

Honorable Bert Ford, page 18

(at page 304)

". . . Under these decisions the inquiry
on an appeal or court proceeding authorized by
the Texas Liquor Control Act from any administra-
tive order, rule, or regulation of the board, is
to determine whether the board acted within the
statutes under which it operates; whether its
complained of order is sustained by substantial
evidence; and whether it acted arbitrarily or
capriciously in the performance of its administra-
tive duties."

The law on this subject is also summarized
by Judge George of the Waco Court of Civil Appeals in
the case of Texas Liquor Control Board v. Warfield,
110 S. W. (2d) 646, 648:

"Texas Liquor Control Board and its
administrator are empowered and authorized
by arts. 666-12, 666-12a, Vernon's Annotated
Penal Code, to cancel package store permits
theretofore granted upon the happening of
certain specified events, after notice and
hearing, and such action is not judicial
but is merely the performance of an admini-
strative function. Bradley v. Texas Liquor
Control Board (Tex. Civ. App.) 108 S. W. 2d
300; State v. DeSilva, 105 Tex. 95, 145
S. W. 330; Baldacohi v. Goodlet (Tex. Civ.
App.) 145 S. W. 325.

"Yet the jurisdiction of the courts over
the power and authority of the board and its
administrator to cancel package store permits
is to determine whether they acted within the
scope of their delegated authority, based
their order or ruling upon substantial evi-
dence, and did not act unreasonably or arbi-
trarily in making their order, and the exer-
cise of this power is judicial in its
nature. Bradley v. Texas Liquor Control
Board (Tex. Civ. App.) 108 S. W. 2d 300;
Shupee v. Railroad Commission, 123 Tex. 521,
73 S. W. 2d 505; Brown v. Humble Oil & Ref.

Co., 126 Tex. 296. 83 S. W. 2d 935, 85
S. W. (2d) 1069, 99 A. L. R. 1107, 101
A. L. R. 1393; Modeste v. Public Utilities
Commission, 97 Conn. 453, 117 A. 494; State
v. Great Northern Ry. Co., 130 Minn. 57,
153 N. W. 247, Ann. Cas. 1917B, 1201."

2.  Upon the appeal to the district court,
the district court has no right to determine as an
original proposition as to whether the license should
be granted or refused, but is confined to the determina-
tion of the questions whether the County Judge followed
the statutory procedure and whether he heard evidence
which constituted a reasonable basis for his action. This
has been repeatedly stated to be the rule by the courts
in cases involving appeals from action by the Texas
Liquor Control Board, or the administrator, and we
are of the opinion that the same rules will be applied
to appeals from action by the County Judge.

Bradley v. Texas Liquor Control Board, 108
S. W. (2d) 300, at page 304;

". . . Under these decisions the in-
quiry on an appeal or court proceeding
authorized by the Texas Liquor Control Act
from any administrative order, rule, or
regulation of the board, is to determine
whether the board acted within the statutes
under which it operates; whether its complained
of order is sustained by substantial evidence;
and whether it acted arbitrarily or capricious-
ly in the performance of its administrative
duties. . ."

Texas Liquor Control Board v. Floyd, 117 S. W.
(2d) 530, 534;

". . . It has been frequently held that
the district court, upon such appeals, may
only determine whether or not there was sub-
stantial testimony before the Board to support
its findings, or did it act capriciously or
arbitrarily."

Honorable Bert Ford, page 20

Texas Liquor Control Board v. Lanza, 129
S. W. (2d) 1153, 1154:

"The settled rule, stated conversely,
is that, orders or findings of fact of a
regulatory body or commission, are not
reviewable on appeal, unless they are un-
supported by evidence; Humble Oil & Refining
Co. v. Railroad Commission et al., Tex.
Civ. App., 112 S. W. 2d 222. . ."

McCormick v. Texas Liquor Control Board,
141 S. W. (2d) 1004, 1005:

". . .The Liquor Control Act, Vernon's
Ann. P. C. Art. 666-1 et seq., is purely
regulatory in nature and the administrator
of the Liquor Control Board is not governed
by the strict rules governing courts in the
conduct of his hearings. Our courts have
consistently held that the action of the
administrator in cancelling a permit will
not be interfered with by the courts where
it appears that he acted upon substantial
evidence warranting cancellation of the per-
mit. Texas Liquor Control Board v. Lanza,
Tex. Civ. App., 129 S. W. 2d 1153; Texas
Liquor Control Board v. Smalley, Tex. Civ.
App., 129 S. W. 2d 466. In attacking the
order of the Board, cancelling his permit,
appellant had the burden of proving the in-
validity of the order of cancellation by
showing that the administrator's findings
were without substantial evidence to support
them. Vernon's Ann. P. C., Art. 666-12a,
Subsec. 5; Texas Liquor Control Board v.
Lanza, Tex. Civ. App., 129 S. W. 2d 1153. . ."

C. Renewal of License

Under the foregoing heading, you make the
following statement and ask the following question:

Honorable Bert Ford, page 21

"The Texas Liquor Control Act, Section 7 (a), Article II thereof, in regard to expiration and renewal of licenses, provides as follows:

"'Any license issued under the terms of this Article, except Branch Licenses and Temporary Licenses specifically provided for, shall terminate one year from the date issued, and no license shall be issued for a longer term than one year. Any person now holding a license to manufacture or sell beer in this State and desiring to renew the same shall before expiration of his present license, and not more than thirty (30) days prior to such expiration date, be required to make application in the manner herein provided for the primary issuance of any class of license; and when it is desired to renew any license obtained under the procedure provided in this Article, the holder of such license shall make written application to the Assessor and Collector of Taxes of the county of the Licensee's residence not more than thirty (30) days prior to the date of expiration of the license held by him. Such application for renewal shall be signed by the applicant and contain full and complete information as set out and required in any appli ation for original license, and applicant shall pay to the Assessor and Collector of Taxes the appropriate license fee for the class of license sought to be renewed. The Assessor and Collector of Taxes shall thereupon transmit to the Board a copy of said application for renewal together with the certification that all required fees have been paid for the ensuing license period; and upon receiving the copy of said application and certification as to the payment of fees, the Board or Administrator may in its discretion issue the license applied for, or may within five (5) days after receipt of such application reject the same and require that the applicant for renewal file application with

Honorable Bart Ford, page 22

the County Judge and submit to hearing be-
fore such County Judge in the manner required
of any applicant for the primary or original
license. Any applicant for renewal when
such renewal is rejected by the Board or
Administrator shall be entitled to refund
of any license fee paid to the County Asses-
sor and Collector of Taxes at the time of
filing his application for renewal.

"1. If the holder of a license permits
his license to expire under its terms with-
out renewing same in accordance with the above-
quoted statute, would he, under the law,
after such expiration be entitled to a renew-
al of a license or would he necessarily have
to make application for a new license in the
same manner as he would an original license?"

1. The law makes specific requirements as
to the manner in which applications for renewal shall
be made. A person who complies with these requirements
may have his license renewed without the necessity of
a hearing before the County Judge, unless the Board
or Administrator so requires. In our opinion it must
not be presumed that the Legislature did an idle thing
in making these requirements as to applications for
renewals, and a person who fails to comply with the
law loses his privilege of applying for a renewal and
must apply for a new license in the same manner as
he would apply for an original license.

D. Transfer of License

Under the foregoing heading, you submit
the following statement and questions:

"Section 7 (d), Article II of the Texas Liquor Control Act provides as follows:

"'No license issued under the provisions of this Article shall be assignable by the holder thereof to any other person; provided, that should any holder of a license desire to change the place of business designated in such license, he may do so by applying to the County Judge and receiving his consent or approval as in the case of original application for license as herein provided and without being required to pay additional license fees for the remaining unexpired term of the license held by him.' (Underscoring ours)

"1. In case of an application for a transfer of license, is it mandatory under the above-quoted statute that such application be filed with the County Judge and published by posting, and a hearing held thereon in the same manner as would be necessary in case the applicant were making an original application for a license?

"2. Would a protest which would be good against an original application be good against an application for a transfer of license?"

1. In our opinion, it is mandatory that the application for leave to change the place of business of the licensee shall be filed with the County Judge and the same notice by posting and the same hearing would be necessary as in the case of an original application for a license. The above quoted statute provides that the change in the place of business may be obtained "by applying to the County Judge and receiving his consent or approval as in the case of original application." As we have already pointed out, in Article 667-6, Vernon's Penal Code, the Legislature expressly provided that the place of the operation of the business, as well as personal qualifications of the applicant and the manner in which he will conduct his business, may be considered in granting or refusing the license. If a beer business is to be moved into a new

Honorable Bert Ford, page 24

location, or even a new neighborhood, proper notice
should be given and a hearing held in order that
proper protests may be made by any parties interested
adversely in the operation of the business at the pro-
posed location.

2. Since the application for a change in
the place of business relates only to the new place
where the licensee seeks to operate, the grounds for
refusing the application would be such as apply to
the propriety of operating at such place. We do not
believe that the application for a permit to change
the place of business would open up for a new investi-
gation the personal qualifications of the licensee
or any other matters except whether the proposed new
location is a proper place for such a business to be
operated.

### Supplementary Licenses

#### A. Disqualification

Under the foregoing heading, you set forth
the following statement and questions:

"The Texas Liquor Control Act, Section
10(a), Article II thereof, provides in part
as follows:

"'It shall be unlawful for any person
to sell beer or offer same for sale between
the hours of 12:00 o'clock midnight and
7:00 A. M. of any day or from and after
12:00 o'clock midnight Saturday until
7:00 A. M. Monday of the following week;
provided, however, that any holder of a
Retail Dealer's License or a Wine and Beer
Retailer's Permit shall, upon showing to
the satisfaction of the County Judge that
he is engaged also in the sale of food
and other commodities for human consump-
tion, and that the sale of beverages for
which a license is required does not dur-
ing such prohibited hours normally in the
course of any one week's time amount in

dollars and cents to more than the sale value of food and other commodities for human consumption sold by such licensee during such hours, be entitled without being required to pay any fee therefor, to a supplementary license authorizing him to sell such beverages during any hour of any day. Said supplementary license shall be on a form furnished by the Board or Administrator and upon being issued shall be attached to and become a part of basic license of the holder, and such supplementary license shall expire with the license of which it is a part; provided further, that the Board or its representatives may at any time make inquiry into the business of such holder; and unless it can be shown by the licensee that his sales of alcoholic beverages are not exceeding in value the sales of food and other commodities for human consumption during the hours referred to in this provision, the Board or Administrator is authorized after notice and hearing to issue an order revoking such supplementary license, and the holder of a license so revoked shall not be entitled to a supplementary license for six (6) months thereafter.' (Underscoring ours)

"1. Where a representative of the Texas Liquor Control Board makes inquiry into the business of the holder of a supplementary license, as provided in the underlined portion of the above-quoted statute, and such holder fails to show such representative that his food sales exceed the sale of beer, is such failure on the part of the holder grounds for cancellation of such license?

"2. In making such showing to the representative of the Board, does the holder have to show that his food sales exceed his beer sales during each day during the week, during each week during the year, during each month during the year, or that his food sales exceed his beer sales during the course of a year's time?"

Honorable Bert Ford, page 26

1.    The statute quoted above provides that
the supplementary license may be revoked "unless it
can be shown by the licensee" that the sales of al-
coholic beverages do not exceed in value the sales of
food and other commodities during the stated periods
of time.   This statute clearly places the burden on
the licensee to make the necessary showing as to his
sales, and his failure to make such showing, after
notice and hearing, justifies the Board or Administra-
tor in revoking such supplementary license.

We believe, however, that under the statute,
the licensee is entitled to an opportunity, after
notice, to present at a hearing before the Board or
Administrator evidence as to his sales of alcoholic
beverages and sales of food, and that mere inability
or failure of the licensee to present such evidence
to a representative of the Board who is inquiring
into his business would not alone be sufficient
ground for revoking the license.   The facts as to the
sales by the licensee are to be determined by the
Board or Administrator, after hearing, and we believe
that it was the intention of the statute to place the
burden of proof at such hearing on the licensee to
show that his sales of alcoholic beverages are not
exceeding in value the sales of food and other com-
modities for human consumption.

2.    The statute is not at all clear as to
the period of time which shall be considered in de-
termining whether the sales of alcoholic beverages
exceed in value the sales of food and other commodities
for human consumption, except, of course, that only
sales during the hours between 12:00 midnight and 7:00
A. M. of any day and from 12:00 o'clock midnight
Saturday until 7:00 A. M. Monday of the following
week shall be considered.   We believe that the Legis-
lature intended in the last clause underlined in the
statute quoted above to set up the same standard as
that set out in the first clause underlined above in
said statute, i. e., "during such prohibited hours
normally in the course of any one week's time."   We
think that this language clearly eliminates the
possibility of considering single days, since the
period designated is "any one week's time."   Further-

Honorable Bert Ford, page 27

more, the use of the word "normally" manifests an
intention that a single week must not be considered
alone as a standard, but it must be a normal or
average week's sales. The statute does not tell us
over what period the average must be taken, but leaves
this to the reasonable discretion of the Board or Ad-
ministrator. If there are seasonable variations in
sales, the Board or Administrator should consider a
sufficiently long period so as to arrive at a fair
average in order to determine what "normal" sales have
been. The length of such period which will be used
by the Board or Administrator will have to be deter-
mined on a reasonable basis by the Board or Administra-
tor depending upon the facts as to seasonal or periodic
variations in sales in each particular case.

B.  Qualification for Renewal

Under the foregoing heading you set forth
the following statement and question:

"Rule and Regulation No. 22B-1 of
the Texas Liquor Control Board, relating
to renewal of existing supplementary
licenses, provides as follows:

"'Any retail beer licensee for on-
premises consumption, or wine and beer per-
mittee, now holding a supplementary license,
may, at the time of the receipt of his re-
newed basic license, make application in
duplicate to the County Judge of the county
of his residence, for renewal of his sup-
plementary license, which said application
shall be in affidavit form and containing
the following information:

"'State of Texas,

"'County of _____:

"'Your affiant, _____, a resident citizen of the county and State above set forth, being of lawful age, and first duly sworn, on oath states and represents to the County Judge of _____ County, Texas, and to the Texas Liquor Control Board as follows:

"'(1) That he is the holder of a renewal retail beer dealer's on-premise license, or wine and beer retailer's permit, No. _____, issued by the Texas Liquor Control Board on the ___ day of _____, 19_____.

"'(2) That he was the holder of a Supplementary License No. _____, issued by the County Judge of _____, County, Texas, on the ___ day of _____,19___, for the preceding license period.

"'(3) That at all times during the existence of the Supplementary License period aforesaid, the sale of food and other commodities for human consumption sold by affiant during prohibited hours as defined by Section 10(a), Article II, of the Texas Liquor Control Act, exceeded in dollars and cents the amount of beer sold during said hours and no fact exists that in any way disqualifies applicant from receiving said Supplementary License, and further affiant saith not.

_____
AFFIANT

"'Sworn to and subscribed before me this the ___ day of _____, 19___.

_____
Notary Public in and for _____County, Texas.'

Honorable Bert Ford, page 29

"'Said application shall be signed and
sworn to by affiant, and presented to the
County Judge of the County of his residence,
and if said County Judge has reason to be-
lieve that any statement contained therein
is untrue or misleading, he may refuse to
issue the same; and if the County Judge is
satisfied that the statements contained in
said application are true, he may issue the
renewed Supplementary License to affiant,
which said Supplementary License is to be
attached to and made a part of the basic
license, and shall expire on the same date
as the basic license.

"'A copy of the application, together
with a copy of the Supplementary License so
renewed, if granted, shall be forwarded by
the County Judge to the Texas Liquor Control
Board at Austin, Texas.'

"This Rule and Regulation was passed,
no doubt, to provide a method of renewing
a supplementary license, due to the fact
that the statute was not specific in regard
to such procedural method.

"1. Where the application for renewal
is made, is the County Judge duty-bound to
take such affidavit at its face value, or
does he have the discretionary authority to
require additional proof other than the sworn
affidavit of the applicant; and does he have
the discretionary authority to refuse renewal
applications if he has reason to believe
that such affidavit is misleading or untrue?"

Honorable Bert Ford, page 30

1. The County Judge is not required to take the affidavit of the applicant at its face value but has discretionary authority to accept or reject such application upon evidence heard by him, if such evidence shows a reasonable ground for believing that material statements in said affidavit are misleading or untrue. Article 667-7, Vernon's Penal Code, provides that the Board or Administrator may require the applicant for a renewal license to "file application with the County Judge and submit to hearing before such County Judge in the manner required of any applicant for the primary or original license." We believe that this gives the County Judge power to refuse to accept as true the statements in the affidavit, provided that there is other evidence giving reasonable grounds for believing that the statements contained in the affidavit are not true.

## Injunctions

Under the above heading, you set out the following statement and questions:

"The Texas Liquor Control Act, Section 27, Article II thereof, provides as follows:

"'Upon having called to his attention by affidavit of any credible person that any person is violating, or is about to violate, any of the provisions of the Texas Liquor Control Act or if any permit or license was wrongfully issued, it shall be the duty of the Attorney General, or the District or County Attorney to begin proceedings to restrain any such person from the threatened or any further violation, or operation under such permit or license, and the District Judge shall have authority to issue restraining orders without hearing, and upon notice and hearing to grant injunction, to prevent such

Honorable Bert Ford, page 31

threatened or further violation by the person complained against, and may require the person complaining to file a bond in such amount and containing such conditions and in such cases as the Judge may deem necessary. Upon any judgment of the Court that violation of any restraining order or injunction issued hereunder has occurred, such judgment shall operate to cancel without further proceedings, any license or permit held by the person who is defendant in the proceedings, and no license or permit shall be reissued to any person whose license or permit has been so cancelled, revoked, or forfeited, within one year next preceding the filing of his application for a new license or permit. It shall be the duty of the District Clerk to notify the County Judge of the county wherein was issued any license or permit so cancelled, and to notify the Board of any judgment of a court which may operate hereunder to cancel a license or permit.'

"1. Where a licensee has been enjoined from violating the Texas Liquor Control Act or any particular phase thereof and is cited for contempt of court and is found guilty of being in contempt of court by virtue of having violated some provision of the injunction, is his license automatically, by operation of law, void and of no further force and effect; and, without further proceedings and without the court's judgment so declaring, would such licensee be doing business without a license should he fail to cease doing business upon the date the contempt judgment was rendered?

Honorable Bert Ford, page 32

"2. What would be the status of the
license if in the case of a corporation an
officer or employee of the corporation,
having been enjoined, is found guilty of
being in contempt of court?

"3. What would be the status of the
license if in the case of a partnership,
association, or individual, an employee
or agent of the licensee, having been first
enjoined, is found guilty of being in con-
tempt of court?"

1. The statute which you have quoted above
("Article 667-27, Vernon's Penal Code) expressly pro-
vides that, "upon any judgment of the court that
violation of any restraining order or injunction
issued hereunder has occurred, such judgment shall
operate to cancel without further proceedings, any
license or permit held by the person who is defendant
in the proceedings. . ." The clear import of this
language is that the judgment finding the defendant
guilty of a violation of an injunction of the court
works an ipso facto cancellation of the license, even
though no such express provision be contained in the
judgment. No doubt the better practice is to have the
judgment provide that the license is canceled, but the
cancellation follows as a matter of law from the judg-
ment finding that a violation of the injunction has
occurred, and a recitation of the cancellation in the
judgment is not essential. The court has no discre-
tion as to whether a cancellation will result from such
judgment. Compare Texas Liquor Control Board v. Blacher,
115 S. W. (2d) 1030, in which it was held that the
district court had no discretion to refrain from can-
celing the license where the evidence gave reasonable
support to the Board's conclusion that the Liquor
Control Act had been violated.

2. Article 4661, Vernon's Texas Civil Statutes,
provides in part as follows:

Honorable Bert Ford, page 33

"An injunction restrains the attorneys, agents, servants and employes of the party enjoined, as well as the party himself, effective from the service or notice of the injunction and during its continuance in force. . . . "

It follows that if an officer or employee of a corporation violates the injunction and is found in contempt of the court's judgment, the license is can-celed. Necessarily, the corporation can act only through its agents. In analogous cases, it has been held that a license may be canceled for violations of the Liquor Control Act by an agent or servant, even contrary to express instructions of the licensee. Bradley v. Texas Liquor Control Board, 108 S. W. (2d) 300; Texas Liquor Control Board v. Warfield, 122 S. W. (2d) 669; Texas Liquor Control Board v. Floyd, 117 S. W. (2d) 530.

3. Assuming that the employee or agent of the licensee was purporting to act as such at the time of the violation of the court's injunction, his unlawful act would be ground for canceling the license of his em-ployer. Bradley v. Texas Liquor Control Board, 108 S. W. (2d) 300; Texas Liquor Control Board v. Warfield, 122 S. W. (2d) 669; Texas Liquor Control Board v. Floyd, 117 S. W. (2d) 530. However, unless the employer is a defendant in the injunction proceeding, the statute quoted above does not provide that there shall be auto-matic cancellation, the statute providing that the judg-ment shall operate to cancel "any license or permit held by the person who is defendant in the proceedings." If the agent, and not the employer, is the defendant, we believe that in order to cancel the license of the employer it would be necessary to follow the procedure

for such cancellation set out in Article 667-19, Vernon's Penal Code!

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *James P. Hart*

James P. Hart
Assistant

JPH:LW

APPROVED JAN 4, 1941

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS



APPROVED
OPINION
COMMITTEE
BY _____
CHAIRMAN